Evan J. Smith
BRODSKY SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HUMBERTO ORTEGA,<br><br>Plaintiff,<br><br>vs.<br><br>TRIPLE-S MANAGEMENT CORPORATION, ROBERTO GARCÍA-RODRÍGUEZ, LUIS A. CLAVELL-RODRÍGUEZ, CARI M. DOMÍNGUEZ, DAVID H. CHAFEY, JR., MANUEL FIGUEROA-COLLAZO, JOSEPH A. FRICK, ROBERTO SANTA MARÍA-ROS, GAIL B. MARCUS, and STEPHEN L. ONDRA,<br><br>Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Humberto Ortega ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Triple-S Management Corporation ("Triple-S" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a

result of Defendants' efforts to sell the Company to GuideWell Mutual Holding Corporation. ("Parent") through merger vehicle Guidewell Merger, Inc. ("Merger Sub," and collectively with Parent, "GuideWell") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an August 24, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, GuideWell will acquire all the outstanding shares of Triple-S common stock for $36.00 per share in cash. As a result, Triple-S will become an indirect wholly-owned subsidiary of GuideWell.

3.      Thereafter, on September 24, 2021, Triple-S filed a Preliminary Proxy Statement on Form PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on September 24, 2021 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus

in violation of the Exchange Act. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Triple-S, provided by Triple-S to the Board's financial advisor Goldman Sachs & Co. LLC ("Goldman Sachs"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Goldman Sachs, if any, and provide to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

7.      Plaintiff is a citizen of California and, at all times relevant hereto, has been a Triple-S stockholder.

8.      Defendant Triple-S is an insurance holding company based in San Juan, Puerto Rico, which offers a wide range of insurance products and services in Puerto Rico through its wholly owned subsidiaries. Triple-S is incorporated under the laws of Puerto Rico and has its principal place of business at 1441 F.D. Roosevelt Avenue, San Juan, PR 00920. Shares of Triple-S common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "GTS".

9.      Defendant Roberto García-Rodríguez ("García-Rodríguez") has been a Director of the Company at all relevant times. In addition, García-Rodríguez serves as the Company's Chief Executive Officer ("CEO") and President.

10.     Defendant Luis A. Clavell-Rodríguez ("Clavell-Rodríguez") has been a director of the Company at all relevant times. In addition, Clavell-Rodríguez serves as the Company's Chairman of the Board of Directors.

11.     Defendant Cari M. Domínguez ("Domínguez") has been a director of the Company at all relevant times. In addition, Domínguez serves as the Company's Vice Chairman of the Board of Directors.

12. Defendant David H. Chafey, Jr. ("Chafey, Jr.") has been a director of the Company at all relevant times.

13. Defendant Manuel Figueroa-Collazo ("Figueroa-Collazo") has been a director of the Company at all relevant times.

14. Defendant Joseph A. Frick ("Frick") has been a director of the Company at all relevant times.

15. Defendant Roberto Santa María-Ros ("Santa María") has been a director of the Company at all relevant times.

16. Defendant Gail B. Marcus ("Marcus") has been a director of the Company at all relevant times.

17. Defendant Stephen L. Ondra ("Ondra") has been a director of the Company at all relevant times.

18. Defendants identified in ¶¶ 9 - 17 are collectively referred to as the "Individual Defendants."

19. Non-Party GuideWell is a not-for-profit mutual holding company and the parent to a family of forward-thinking companies focused on transforming health care. GuideWell is a Florida not-for-profit mutual insurance holding company.

20. Non-Party Merger Sub is a wholly owned subsidiary of GuideWell created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NYSE which is headquartered in this District..

## SUBSTANTIVE ALLEGATIONS

### Company Background

24.     Triple-S, through its subsidiaries, provides a portfolio of managed care and related products in the commercial, Medicare Advantage, and Medicaid markets. It operates through three segments: Managed Care, Life Insurance, and Property and Casualty Insurance. The Company offers various managed care products, including health maintenance organization plans; preferred provider organization plans; BlueCard program; Medicare Supplement products; Medicare Advantage products; Medicaid plans; and claims processing and other administrative services to employers, individuals, and government entities. The Company markets and distributes its products through a network of internal sales force, direct mail, independent brokers and agents, telemarketing staff, traditional media, and digital media. It holds rights to the Blue Cross and Blue Shield name and marks throughout Puerto Rico, the United States Virgin Islands, Costa Rica, the British Virgin Islands, and Anguilla. The Company was founded in 1959 and is headquartered in San Juan, Puerto Rico.

25.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.   For example, in the August 5, 2021 press release announcing its 2021 Q2 financial results, the Company highlighted Operating revenue of $1.0 billion, a 15.1% increase from the prior-year period and Net income of $23.6 million, or $1.00 per diluted share.

26.     Speaking on the positive results, CEO Defendant Garcia-Rodriguez said, "'We had another solid quarter and are pleased with our overall performance for the first half of 2021 as utilization trends fully normalize. We once again generated double-digit revenue growth year-over-year driven by our Medicaid offering and bolstered by another quarter of solid growth at our Life and P&C segments. We are also making steady progress on our integrated healthcare strategy, with plans to introduce team-based, integrated chronic care management programs in the next few months. We remain confident in our expectations for the full year and continue to deliver attractive products, high-quality care and superior service to our members.'"

27.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Triple-S. Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

28.     Despite this upward trajectory, the Individual Defendants have caused Triple-S to enter into the Proposed Transaction without providing requisite information to Triple-S stockholders such as Plaintiff.

*The Flawed Sales Process*

29.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible no matter the price.

30.     Notably, the Preliminary Proxy Statement fails to provide adequate information as to why no concerted market check was carried out by the Company or anyone on its behalf. The Preliminary Proxy Statement reveals that other than GuideWell, only two other potentially interested third parties were contacted regarding a potential strategic alternative. Furthermore, it appears that the communication with one such third party was so distant in time to the sales process as to be inconsequential eventual negotiations with GuideWell.

31.     The Preliminary Proxy Statement also fails to indicate if the Company Board created a committee of disinterested, independent directors to lead the sales process.

32.     In addition, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and GuideWell, whether this agreement differed from any other agreement with potentially interested third parties, including those not specifically mentioned by the Preliminary Proxy Statement, and if so in what way, and if the terms of any such agreements included "don't-ask, don't-waive" provisions or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away.

33.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

34.     On August 24, 2021, Triple-S and GuideWell issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **JACKSONVILLE, Fla. and SAN JUAN, Puerto Rico – August 24, 2021 –** GuideWell Mutual Holding Corporation ("GuideWell"), a health solutions company and parent of Blue Cross and Blue Shield of Florida, Inc. ("Florida Blue"), and Triple-S Management Corporation ("Triple-S Management") (NYSE: GTS), a leading health care services company in Puerto Rico, today announced they will combine to transform the health care experience for their members in Florida and Puerto Rico.
>
> Under the terms of the definitive agreement, GuideWell will acquire all the outstanding shares of Triple-S Management common stock for $36.00 per share in cash, representing a premium of approximately 49% to Triple-S Management's 90-day volume-weighted average trading price. The transaction (the "Transaction") equity value is approximately $900 million. Upon completion of the Transaction, Triple-S Management will become a subsidiary of GuideWell and will continue to operate under the Triple-S Management brand. The agreement was unanimously approved by both companies' Boards of Directors.
>
> The combination brings together industry leaders – and builds on the companies' complementary assets, cultures and strategic visions. GuideWell is a not-for-profit mutual holding company and the parent to a family of forward-thinking companies, including Florida Blue, that are focused on transforming health care. In total, GuideWell companies serve more than 45 million people in 45 states. Florida Blue is the oldest and largest health insurer in Florida, proudly serving more than 5 million members across all 67 counties in the state. Triple-S Management serves more than 1 million consumers in Puerto Rico, with a strong position in Medicare Advantage, a leading position in Puerto Rico Medicaid and commercial segments, and solid foundations in its Life and P&C segments.

The Transaction positions GuideWell, Florida Blue and Triple-S Management to better serve customers and members in a rapidly evolving environment. The combined entity will be a well-diversified leader, strongly positioned to compete effectively and invest substantially to drive improved health outcomes, access and affordability.

"The Transaction expands GuideWell's core insurance operations and positions Florida Blue and Triple-S Management for significant growth and meaningful value creation for the customers and communities we serve," said Pat Geraghty, president and chief executive officer of GuideWell and Florida Blue. "Florida Blue and Triple-S Management are both recognized for their high-quality, affordable health care and their actions deeply rooted in supporting community well-being. With Puerto Rico's outlook strengthening, and Florida experiencing fast-paced growth, especially in its Puerto Rican and Hispanic populations, this is a natural next step."

"Uniting our mission-driven, community-focused teams is a great outcome for our companies, as well as for Puerto Rico and Florida, and our shareholders," said Roberto Garcia-Rodriguez, president and chief executive officer of Triple-S Management. "We have long admired Florida Blue's locally focused approach to care, and we share their respect for the uniqueness of every community served. By partnering with a strong organization that shares our mission and approach, we will be well positioned to achieve our strategic goals, expand access and improve health care outcomes for all our members. The Transaction is also clearly in the best interests of our shareholders, given the strategic fit, the significant premium to our current share price and resulting shareholder liquidity."

The Transaction:

Builds on deep local expertise to address the unique needs of Florida Blue's and Triple-S Management's diverse customers, driving improved health outcomes, affordability, access and health equity. Triple-S Management and Florida Blue will work together to launch culturally relevant solutions and improve key drivers of health. Triple-S Management's deep understanding of the Puerto Rican and Hispanic communities, its Spanish-speaking provider network and customer support, and its strong name and brand recognition in Puerto Rico will benefit Florida Blue as the Puerto Rican and Hispanic communities continue to experience fast-paced growth in Florida.

Accelerates GuideWell's and Triple-S Management's diversification and growth. GuideWell and Triple-S Management will leverage each other's capabilities and expertise to improve health care value for their respective customers. For example, the Transaction will accelerate Florida Blue's growth in Medicare Advantage and across all lines of business in Florida's rapidly growing Puerto Rican and Hispanic populations.

Addresses affordability and enables increased investment. As overall health care costs continue to rise, the companies' expanded scale and reach will enable them to address affordability and continue to invest in accessible, effective health solutions.

Drives immediate accretion and propels long-term growth through scale advantages. GuideWell expects the Transaction to be immediately accretive. The Transaction will create a leading provider of Medicare in the United States, enabling Florida Blue and Triple-S Management to better compete against other insurers in Florida and Puerto Rico.

Transaction Details

The Transaction will be completed through a merger of a newly created subsidiary of GuideWell with and into Triple-S Management, with Triple-S Management as the surviving corporation. Following completion of the Transaction, Triple-S Management will operate as a wholly owned subsidiary of GuideWell and will continue to be led by its current management team while operating under the Triple-S Management brand. Triple-S Management's providers, members and community partners will continue to work with the Triple-S Management staff they know and trust.

The Transaction is expected to close in the first half of 2022, subject to satisfaction of normal closing conditions, including customary state and federal regulatory review and approval as well as approval by Triple-S Management shareholders.

***Potential Conflicts of Interest***

35.     The breakdown of the benefits of the deal indicate that Triple-S insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Triple-S.

36.     Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, while the Preliminary Proxy Statement provides the following, it fails to disclose an accounting of how much merger consideration the below holdings will be exchanged for upon the consummation of the Proposed Transaction:

| Name and Address of Beneficial Owner | Amount and Nature of Beneficial Ownership | Percent of Class |
|---|---|---|
| **Non-Employee Directors** | | |
| Luis A. Clavell-Rodríguez | 76,320 | * |
| David H. Chafey, Jr. | 46,991 | * |
| Cari M. Dominguez | 44,984 | * |
| Manuel Figueroa-Collazo | 52,787 | * |
| Roberto Santa María-Ros | 29,118 | * |
| Gail B. Marcus | 23,079 | * |
| Stephen L. Ondra | 7,898 | * |
| Roberta Herman | 4,435 | – |
| **Named Executive Officers** | | |
| Roberto García-Rodríguez | 425,830 | 1.79% |
| Juan J. Román-Jiménez | 104,763 | * |
| Victor J. Haddock | 18,014 | * |
| Madeline Hernández-Urquiza | 174,326 | * |
| José E. Novoa-Loyola | 67,784 | * |
| Arturo L. Carrión-Crespo | 109,816 | * |
| Current Non-Employee Directors, Director nominee(s) and Executive Officers as a Group (19 persons, including 12 of the 13 named above) | 1,217,336 | 5.12% |
| **5% Stockholders** | | |
| Pzena Investment Management, LLC<br>320 Park Avenue, 8th Floor<br>New York, NY 10022 | 2,208,428 | 9.43%** |
| FMR LLC<br>Abigail P. Johnson<br>Fidelity Low-Priced Stock Fund<br>245 Summer Street<br>Boston, Massachusetts 02210 | 2,103,582 | 8.978%** |
| Dimensional Fund Advisors LP<br>Building One<br>6300 Bee Cave Road<br>Austin, Texas 78746 | 1,962,030 | 8.4%** |
| BlackRock, Inc.<br>55 East 52nd Street<br>New York, NY 10055 | 2,103,582 | 7.6%** |
| Magnetar Capital LLC<br>1603 Orrington Ave.<br>Evanston, IL 60201 | 1,665,743 | 7.00%** |
| The Vanguard Group<br>100 Vanguard Blvd.<br>Malvern, PA 19355 | 1,224,187 | 5.22%** |

37.    Moreover, upon the consummation of the Proposed Transaction, the Preliminary

Proxy Statement indicates that each outstanding Company stock option, restricted share, or other

equity award will be canceled and converted into the right to receive certain consideration according to the merger agreement, however the Preliminary Proxy Statement fails to give an accounting of such equity awards or the consideration due to be paid to Company insiders as a consequence of the consummation of the Proposed Transaction.

38.     In addition, certain employment agreements with certain Triple-S executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff, as follows:

| | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| Roberto García-Rodríguez, President and Chief Executive Officer | 2,935,350 | 10,594,296 | 28,201 | 13,557,847 |
| Juan J. Román-Jiménez, Executive Vice President and Chief Financial Officer | — | 1,598,832 | — | 1,598,832 |
| Madeline Hernández-Urquiza, Executive Vice President and Chief Operating Officer | — | 4,433,076 | — | 4,433,076 |
| José E. Novoa-Loyola, Chief Medical Officer of Triple-S Salud, Inc. | 1,107,000 | 2,064,276 | — | 3,171,276 |
| Arturo L. Carrión-Crespo, President of Triple-S Vida, Inc. | 1,010,761 | 1,871,964 | — | 2,882,725 |

39.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40.     Thus, while the Proposed Transaction is not in the best interests of Triple-S, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

41.     On September 24, 2021, the Triple-S Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

    a.  Specific reasoning as to why no special committee of the disinterested independent directors was created to run the sales process;

    b.  Whether the confidentiality agreements entered into by the Company with GuideWell differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties if any, and if so, in what way;

    c.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including GuideWell, would fall away; and

    d.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides

illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Triple-S's Financial Projections*

43.     The Preliminary Proxy Statement fails to provide material information concerning financial projections for Triple-S provided by Triple-S management and relied upon by Goldman Sachs in its analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading

44.     The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Triple-S management provided to the Board and Goldman Sachs.  Courts have uniformly stated that "projections ... are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

45.     With regard to the Triple-S Projections prepared by Triple-S management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

     a.  The specific inputs and bases used to in determining and applying the listed "material assumptions" that applied to the entire set of projections;

     b.  Adjusted EBITDA, including all underlying necessary inputs and assumptions, including specifically: the definition of Adjusted EBITDA utilized and the specific inputs and adjustments utilized;

     c.  Adjusted EBITDA Margin, including all underlying necessary inputs and assumptions, including specifically: the definition of Adjusted EBITDA Margin utilized and the specific inputs and adjustments utilized;

> d. Adjusted Net Income, including all underlying necessary inputs and assumptions, including specifically: the definition of Adjusted Net Income utilized and the specific inputs and adjustments utilized;
>
> e. Adjusted Net Income Margin, including all underlying necessary inputs and assumptions, including specifically: the definition of Adjusted Net Income Margin utilized and the specific inputs and adjustments utilized;
>
> f. Adjusted Earnings Per Share, including all underlying necessary inputs and assumptions, including specifically: the definition of Adjusted Earnings Per Share utilized and the specific inputs and adjustments utilized; and
>
> g. Unlevered Free Cash Flow, including all underlying necessary inputs and assumptions, including specifically: the definition of Unlevered Free Cash Flow utilized and the specific inputs and adjustments utilized.

46.     The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

47.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

48.     Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Goldman Sachs' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Goldman Sachs*

49.     In the Preliminary Proxy Statement, Goldman Sachs describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions

fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinion.

50.     With respect to the *Illustrated Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

     a.  The specific inputs and assumptions used to determine the utilized discount rate range of 9.00% to 11.50%;

     b.  The specific input for the estimate of Triple-S's weighted average cost of capital utilized, and if it was the same figure as given in the management projections;

     c.  The specific inputs and assumptions underlying the Unlevered Free Cash Flow projections provided and utilized in this analysis;

     d.  The specific inputs and assumptions used to determine the utilized exit terminal year EBITDA multiples ranging from 3.0x to 4.0x;

     e.  The specific inputs and assumptions used to determine the utilized perpetuity growth rates range of (4.2)% to 1.0%;

     f.  All company-specific inputs utilized including, "Triple-S's target capital structure weightings, the cost of long-term debt, after-tax yield on permanent excess cash, if any, future applicable marginal cash tax rate and a beta for Triple-S, as well as certain financial metrics for the United States financial markets generally"; and

     g.  The specific estimated net present value of Triple-S's future tax benefits calculated.

51.     With respect to the *Illustrated Present Value of Future Share Price Analysis*, the Preliminary Proxy Statement fails to disclose the following:

     a.  The specific inputs and assumptions used to determine the utilized next twelve month price to forward earnings per share multiples of 6.00x to 8.50x;

b. The utilized historical average P/E multiples for Triple-S common stock during the period from August 18, 2018 to August 6, 2020;

c. The specific inputs and assumptions used to determine the utilized discount rate of 10.20%;

d. The Company's estimated cost of equity; and

e. The utilized "company-specific inputs, including a beta for Triple-S, as well as certain financial metrics for the United States financial markets generally".

52. With respect to the *Selected Precedent Transaction Analysis*, the Preliminary Proxy Statement fails to disclose the following:

a. The specific inputs and assumptions used to determine the utilized reference range of enterprise value to LTM EBITDA multiples of 6.5x to 11.0x;

b. The specific date on which each precedent transaction closed; and

c. The value of each precedent transaction.

53. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

54. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Triple-S stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

55.     Plaintiff repeats all previous allegations as if set forth in full herein.

56.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

57.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

58.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

59.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have

known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

60.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

61.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

62.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

63.     Plaintiff repeats all previous allegations as if set forth in full herein.

64.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

65.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved,

ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

66.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Triple-S's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

67.     The Individual Defendants acted as controlling persons of Triple-S within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Triple-S to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Triple-S and all of its employees. As alleged above, Triple-S is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to comply with the Exchange Act to

disseminate a Preliminary Proxy Statement that does not contain any untrue statements of

material fact and that states all material facts required in it or necessary to make the

statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: October 12, 2021                                **BRODSKY SMITH**

                                                By: _____

                                                    Evan J. Smith
                                                    240 Mineola Boulevard
                                                    Mineola, NY  11501
                                                    Phone:  (516) 741-4977
                                                    Facsimile (561) 741-0626

                                                    *Counsel for Plaintiff*